

MEMO ENDORSED

**Anthony M. Napoli**
***Partner***
Email: anapoli@pmtlawfirm.com

https://www.pmtlawfirm.com

555 Taxter Road, 5th Floor, Elmsford, NY 10523
Ph: (914) 703-6300
Fax: (914) 703-6688

January 30, 2025

**VIA ECF ONLY**

Honorable Victoria Reznik
United States Magistrate Judge
The Hon. Charles L. Brieant Jr. Federal Building
United States Courthouse
300 Quarropas Street
White Plains, New York 10601

| | | |
|---|---|---|
| **Re** | : | **Fuchs v. LC Carmel Retail LLC, and CVS Pharmacy, Inc.** |
| Case No. | : | 7:24-cv-04147 |
| PMT File No. | : | TMB-CVS-00123/AMN |

**Joint Letter regarding additional deposition of LC Carmel Retail**

Dear Judge Reznik:

Our office represents CVS in this matter which arises from an accident on a sidewalk adjacent to a CVS Store, leased from co-defendant LC Carmel Retail and located in a shopping plaza. Pursuant to Minute entry for the Telephone Status Conference held on 1/16/2025 at 10:30 a.m. (Document No. 28), CVS Pharmacy and LC Carmel Retail raised a dispute over an additional deposition of LC Carmel Retail. After meeting and conferring on that issue, please allow this letter to serve as a joint letter updating the Court on the status of the dispute. Below is each party's position on the issue along with relevant attachments for the Court's review.

Position of CVS

The Answer of CVS (Document No. 7) contains cross-claims against LC Carmel Retail for apportionment and/or claim over by reason of the sole, active, and primary carelessness and/or recklessness and/or negligence and/or affirmative acts of omission or commission and/or breach of contract and/or breach of warranty and/or strict liability of co-defendant LC Carmel Retail and for complete indemnification, contractual and/or common law. CVS's cross-claims further allege that co-defendant LC Carmel Retail is obligated to defend, to indemnify and to hold harmless CVS and that co-defendant LC Carmel Retail failed to procure insurance pursuant to the lease.





The Answer to the Cross-Claims of co-defendant LC Carmel Retail (Document No. 21) generally denies the cross-claims of CVS.

Annexed hereto is the Tender Letter dated May 31, 2024. Also annexed hereto are the July 2, 2024, September 11, 2024, and September 29, 2024 emails to counsel for co-defendant LC Carmel Retail with the May 31, 2024 Tender Letter. Annexed hereto are the December 17, 2024 and the January 13, 2025 emails to counsel for LC Carmel Retail, following the December 14, 2024 deposition of the witness produced on behalf of co-defendant LC Carmel, requesting a witness with knowledge of the lease provisions. Finally, attached is the Tender Letter dated January 30, 2025 to the carrier for co-defendant LC Carmel. Upon information and belief, the carrier for LC Carmel has not issued a Denial of the Tender, a denial of coverage or a disclaimer of liability.

As indicated in the September 29, 2024 email to counsel for co-defendant LC Carmel Retail, the undersigned alleges that the defect alleged by plaintiff and the responsibilities of the parties with respect to the location of the accident are clear. It is CVS's position that the sidewalk where the accident occurred is a common area servicing all of the stores in the shopping plaza. It is clear from the Summons and Complaint that plaintiff alleges that she was injured as a result of improper <u>ownership, operation, control, management and maintenance of the sidewalk</u>, a common areas contemplated by the lease.

Annexed hereto is the deposition transcript of Rocky DeLuca produced on behalf of LC Carmel as well as a copy of the lease which was used as an exhibit to the deposition of Mr. DeLuca. However, Mr. Deluca is not an employee of co-defendant LC Carmel Retail. In fact, he testified that he is employed by Newmark, the property `manager for co-defendant LC Carmel Retail. Mr. DeLuca testified that, generally, a sidewalk would be a common area if it is defined as such in the lease. However, Mr. DeLuca was unable to testify whether the specific sidewalk is a common area under the subject lease.

It is respectfully requested that co-defendant LC Carmel produce a *party* witness employed by co-defendant LC Carmel Retail with knowledge of the lease provisions and of the premises itself. Clearly, *even though LC Carmel may admit control over the subject sidewalk*, as LC Carmel Retail continues to refuse to honor CVS's tender and demand for defense and indemnification, discovery should be freely provided and production of a witness to testify at a virtual deposition as to <u>ownership, operation, control, management and maintenance of the sidewalk</u> in question, as alleged by plaintiff, and to testify to the insurance procurement provisions pursuant to the lease, would not prejudice co-defendant LC Carmel Retail.

It is my understanding that co-defendant LC Carmel Retail will argue that a Notice to Admit will serve a similar purpose to production of a lease witness for deposition. Should the Court agree with co-defendant LC Carmel Retail's position, CVS, in the alternative, respectfully






requests that the Court order and direct that co-defendant LC Carmel Retail shall be precluded from opposing the summary judgment motion of CVS, to dismiss plaintiff's claims and to grant CVS's relief as requested in its cross-claims, on the basis that the lease is ambiguous, that there are issues of fact as to the lease provisions and/or that the motion should be denied due to the lack of admissible evidence. Pre-motion letters are currently due by February 28, 2025 (Document No. 17).

Position of LC Carmel

As noted above, defendant, LC Carmel Retail LLC (hereinafter "LC Carmel") interposed an answer to plaintiff's complaint in which it admitted the following:

> "That on May 30, 2023, defendant LC CARMEL RETAIL LLC was the owner of premises 1905 Route 6, Carmel, New York"
> "That on May 30, 2023, defendant LC CARMEL RETAIL LLC was the owner of the parking lot and the walkway leading to the entrance of the premises 1905 Route 6, Carmel, New York."

Thus, at the outset there is no dispute as to ownership of the parking lot and the walkway at the subject property. Moreover, at our last conference before Your Honor, counsel for plaintiff indicated that he was not seeking a further deposition of the defendants. Thus, the issue of the additional deposition is being solely raised by defendant, CVS, to bootstrap its crossclaims despite the fact that the Lease Agreement, and its terms, speaks for itself, and any questions concerning its application to this case and/or its interpretation must be left to the Court and/or the trier of fact at the time of trial.

In addition, LC Carmel produced copies of the Lease Agreement and Property Management Agreement, during the course of discovery. The Lease Agreement explicitly outlines the legal description of the subject property, the duties, and responsibilities of each party to the Lease Agreement (CVS and LC Carmel) as it relates to any repairs and/or maintenance of the subject property. (See Lease Agreement). Most notably, the Lease Agreement defines "common areas" to include but not limited to "paved parking areas, paved service areas, sidewalks, ramps, roadways, driveways, curbs, and curb cuts.." (See Lease Agreement pp.6-7).

Furthermore, LC Carmel produced Mr. DeLuca who had sufficient knowledge and information regarding the subject property, specifically as it relates to repairs, maintenance, and complaints/incidents, which is evident by his deposition testimony (See Transcript pp.11, 14, 16-17, 67-68). Mr. DeLuca, as Associate Vice President of Property Management, testified that his specific duties and responsibilities entailed the supervision and maintenance of the subject property. In fact, Mr. DeLuca explained in great detail that he performed inspections/walkthroughs of the subject property and handled any maintenance/repairs that






needed to be performed at the subject property. Mr. DeLuca confirmed that he reviewed and was familiar with the Lease Agreement entered into between tenant CVS and LC Carmel but did not recall the specific definition of "common area" outlined in the Lease Agreement (123 pages). However, when presented with the Lease Agreement at his deposition, Mr. DeLuca reviewed the sections as directed by counsel and responded accordingly to each question. (See Transcript pp. 55-58).

In addition, Mr. DeLuca was shown several photographs at his deposition in which he was able to explain what was being depicted and thoroughly answer all of counsels' inquiries. Also Mr. DeLuca explained the process of generating/performing any repairs at the subject premises and confirmed no repairs have been made to the subject property. (See Transcript pp.28, 33-38, 41-43). Mr. DeLuca addressed and answered all questions regarding the issue of prior complaints and accidents at the subject property. (See Transcript pp. 67-68).

Despite LC Carmel's admission of ownership, exchange of the Lease Agreement and Property Management Agreement and the deposition testimony of Mr. DeLuca, it is now being requested that an additional witness be produced to address the clear and unequivocal terms of the Lease Agreement as it relates to ownership, repairs, maintenance and complaints, which were all previously addressed. As such, LC Carmel respectfully objects to said request to produce an additional witness.

The four corners of the Lease Agreement is the best evidence and the language contained within the Lease Agreement speaks for itself. As noted above, the Lease Agreement provides clear and explicit terms and definitions which addresses the concerns of CVS. Furthermore, it is not the role of Mr. DeLuca, or any witness called to testify in this matter to interpret the language of the Lease Agreement. Thus, producing an additional witness familiar with the lease provisions will not lead to any further admissible evidence, as the party witness's speculation as to what a specific lease provision may mean bears no merit on the actual terms of the Lease Agreement.

Additionally, notwithstanding the above, to the extent that CVS still believes it needs further elaboration of the Lease Agreement to which it entered, CVS should be directed to serve a request for admission so that LC Carmel can properly respond and preserve all appropriate objections. As a general principle a request for admission is a properly used disclosure device to eliminate issues from trial matters which are easily provable and about which there can be no controversy.

Lastly, we strongly oppose CVS's application for alterative relief in prohibiting LC Carmel to oppose CVS's motion for summary judgment, as it would be severely prejudicial to LC Carmel. At this juncture, discovery is still ongoing, and every party should be given the right to properly access the viability of posturing a matter for summary judgment and/or opposing a motion, at the close of discovery, when all of the evidence has been submitted in the record.





Position of Plaintiff

By email to all parties on January 30, 2025, Plaintiff's counsel advised that he joins in the application of Defendant CVS.

Very truly yours,

PILLINGER MILLER TARALLO, LLP
Attorneys for Defendant CVS

By *Anthony M. Napoli*

WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP
Attorneys for Defendant LC Carmel Retail

By *Joseph Laird*

DAVID HOROWITZ, P.C.
Attorneys for Plaintiff Carmen J. Fuchs

By *Christopher Joslin*

At the center of the parties' dispute is the deposition of Rocky DeLuca on behalf of Defendant LC Carmel Retail LLC ("LC Carmel"). A review of the deposition transcript reveals that DeLuca testified knowledgeably about many of the topics for which Defendant CVS Pharmacy ("CVS") now seeks additional testimony, including the ownership, operation, control, management, and maintenance of the sidewalk in question. To the extent CVS seeks testimony about LC Carmel's understanding of certain provisions of the lease agreement, there is some merit to LC Carmel's argument that the lease language speaks for itself. Having said that, CVS is entitled to learn whether LC Carmel intends to argue that the provisions of the lease agreement are ambiguous and on what basis. Although LC Carmel's preferred method of written discovery through Requests for Admissions may resolve this issue, a short deposition of another witness from LC Carmel is the most efficient option and avoids protracted motion practice about the sufficiency of whatever written responses LC Carmel might provide.

For the foregoing reasons, CVS's request is **GRANTED** to the extent that LC Carmel is directed to produce a witness with knowledge of the lease agreement and the insurance procurement process to appear for a deposition lasting no more than two hours on the record. The parties are directed to submit a joint status letter, by no later than **3/7/2025**, updating the Court on the status of the deposition and the remainder of discovery.

SO ORDERED.

Hon. Victoria Reznik, U.S.M.J.

Dated: 2/6/2025